DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment that allocated parental rights and responsibilities. The court designated Paula Jeanne McComb-Houghton, plaintiff below and appellant herein, the residential parent and legal custodian of Kayla Marie Houghton, born December 19, 1994. The court further designated Dennis Eugene Houghton, defendant below and appellee herein, the residential parent and legal custodian of Matthew Paul Houghton, born March 25, 1997.
Appellant raises the following assignment of error:
"The trial court abused its discretion in placing Matthew with appellee."
The parties married June 10, 1994 and had two children, Kayla and Matthew. During the parties' marriage, appellee suffered a debilitating back injury and has not been able to work. Appellant has worked a full-time job, ranging from 45 to 60 hours per week, in order to support the family.
The parties' younger child, Matthew, suffers from a form of autism and requires a specifically designed educational program, as well as dedicated parents who will help him cope with his autism.
On October 4, 2002, appellant filed a complaint for divorce. On March 6, 2003, and continuing on March 7, 2003, the court held a trial. At trial, appellant attempted to show that appellee's back problem interferes with his ability to appropriately care for the children, while appellee attempted to show that appellant's work schedule interferes with her ability to appropriately care for the children.
Dr. Kathryn Bobbit, a clinical psychologist, testified that she worked with appellee to develop an educational program for Matthew. Bobbit testified that when she began working with Matthew, he displayed significant delays in the acquisition of age appropriate language and speech and in his ability to relate appropriately with others, including his sibling, Kayla, and his parents.
Bobbit explained that Matthew "requires a comprehensive program. [He] requires a very specialized teaching technique, so the educational program has to be modified quite significantly, in order to enable Matthew to learn educational skills that he'll need." For autistic children, Bobbit recommends "that children have an intensive home program, where they — where parents are specifically trained how to interact with the children in a way that * * * maximizes their developmental capacity." She further testified that Matthew needs "a great deal of predictability and structure in his schedule. Children with autism tend to need a lot of predictability. He'll need to be able to understand that, essentially, the same schedule will happen pretty much every day, where he'll be — what parent will be providing what function for him." She stated that the more predictability and "sameness" that Matthew has in his routine, the better. Bobbit thus recommended that the court's custody order provide as much routine for Matthew as possible, with changes occurring on the weekend.
Bobbit further explained that due to Matthew's special needs and the special attention that his needs require, Kayla also requires special attention so that she does not become resentful. She stated that one time when she observed appellant interacting with Matthew, Kayla approached appellant and wanted to show her a picture. Bobbit testified that "it was just difficult for [appellant] to go back and forth between the two children." She also stated that she has observed Kayla "vying for attention." Bobbit testified that she recommended to appellee that Kayla be given special, one-on-one time with a parent, "especially when one parent is busy * * * interact[ing] with [Matthew]. * * * [T]hat can create a lot of resentment in the child that's typically developing, that they may not be getting the same level of attention or investment by the parents."
Appellant testified that appellee has been abusive to her and to Kayla. She also claimed that appellee's back injury interferes with his ability to appropriately care for the children. In her attempt to establish that appellee's back injury interferes with his ability to care for the children, appellant introduced appellee's "pain diary," which he stored on his computer. In his diary, appellee wrote that he suffered from frequent pain. Appellee further wrote, however, that he continued to spend time with the children and to participate in community activities. In his diary, he notes that he: (1) helped put up the Christmas tree and Christmas decorations; (2) built a shed with the help of friends; (3) participated in meetings; (4) watched sporting events at friends' homes; (5) drove his car to the State of Delaware to visit his parents and his two children from a prior relationship; (6) prepared for Matthew's birthday party; (7) watered the plants; (8) cut the grass; (9) helped appellant paint interior rooms of the house; (10) took walks with Kayla; (11) helped coached Kayla's soccer team; (12) helped out at the "Santa Shop" at Kayla's school; and (13) played miniature golf with Kayla.
Appellee testified that although he suffered debilitating back injuries and has not been able to work, he nonetheless has been able to care for the children and to participate in many social activities. He is involved with the Lions' Club, Civitan Club, the Washington County Land Use Committee, and the Parent-Teacher Organization. Appellee also presented numerous witnesses who stated that they have observed appellee taking care of the children and attending school activities.
On April 15, 2003, the trial court designated appellee Matthew's residential parent and legal custodian and designated appellant Kayla's residential parent and legal custodian. The court found that Matthew, due to his autism, requires a comprehensive program of treatment in and outside the home and that he "needs a lot of predictability in his life. He needs the same schedule day in and day out." The court further noted that Dr. Bobbit expressed concern that Kayla may develop resentment because of the attention that Matthew receives and that the doctor has seen Kayla vying for attention and described her as "a sad little girl."
The court also noted that: (1) because appellee is unemployed, he "devotes a great amount of time" to the parties' children; (2) appellant is not as involved because she works long hours and is the family's primary breadwinner; and (3) both parents are appropriately bonded to the children. The court thus concluded that a "split" custody order would serve the children's best interests. The court found that appellee has the time to provide the stability and predictability that Matthew needs, while appellant would best be able to provide attention and love to Kayla. Appellant filed a timely notice of appeal.
In her sole assignment of error, appellant asserts that the trial court abused its discretion by designating appellee Matthew's residential parent. Appellant complains that the court "ignored strong indicators that [appellee] was less than truthful in his testimony." She contends that the trial court failed to appropriately consider her testimony that appellee was abusive to her and to Kayla. Appellant further complains that the court failed to consider appellee's poor health and how it affects his ability to parent. She argues that the evidence shows that appellee's "pain is so severe that he cannot be expected to engage in the everyday tasks required to parent a child." Appellant also asserts that the court erred by "splitting" custody of the two children.
We initially note that an appellate court will not reverse a trial court's decision allocating parental rights and responsibilities when the record contains a substantial amount of credible and competent evidence to support the court's decision. See Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus; see, also, Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Furthermore, a reviewing court should afford the utmost deference to a trial court's decision regarding the allocation of parental rights and responsibilities. See, e.g., Miller v. Miller (1988), 37 Ohio St.3d 71,74, 523 N.E.2d 846. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding the allocation of parental rights and responsibilities. See, e.g., Bechtol,
supra. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis, 77 Ohio St.3d at 419.
Although a trial court's discretion regarding the allocation of parental rights and responsibilities is broad, it is not absolute. The trial court must follow statutory procedures. Miller,37 Ohio St.3d at 74. When allocating parental rights and responsibilities, R.C.3109.04(B)(1) requires the trial court to consider the child's best interests. In determining the child's best interests, R.C. 3109.04(F)(1) sets forth the factors the trial court must consider:
"(a) The wishes of the child's parents regarding the child's care;
"(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
"(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
"* * *
"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
Appellant's arguments primarily challenge the trial court's decision to discredit some of her testimony. She asserts that the court should have found credible: (1) her testimony that appellee abused her and Kayla; and (2) her testimony that appellee's poor health affects his ability to parent. It is well-established, however, that issues regarding a witness's credibility remain the trial court's province. See, e.g., Silverman v.Silverman, Hocking App. No. 03CA2, 2003-Ohio-3757, at ¶ 5 (citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273).
Regarding appellant's claims of abuse, the trial court specifically found that her claims were "not supported by the evidence" and that her claims "were leveled in order to obtain a tactical advantage in the party's upcoming divorce." The court further noted that several neighbors testified that they did not notice any signs of physical abuse on the children and that "[p]rincipals, teachers and psychologists testified that neither of these children [is] afraid of [appellee], [that the children] are appropriately bonded [with appellee], and [that appellee] is very involved in all of [the children's] activities."
Appellant further asserts that the trial court failed to find that appellee's pain interferes with his ability to parent Matthew. Appellant claims that appellee's "pain diary" shows that he suffers from frequent episodes of severe pain. While appellant correctly asserts that appellee's diary shows that he suffers from severe pain, her assertion that his pain interferes with his ability to parent Matthew does not appear to be correct. We note that appellee's diary reflects that in spite of his pain, he continues to be actively involved in the children's lives and activities. For example, appellee wrote in his diary that despite his pain, he helped cut the grass, decorate the home for Christmas, took walks with Kayla, and helped coach Kayla's soccer team.
Appellant also argues that the trial court improperly ordered that custody of the children be "split." "While it is true that generally the law looks with disfavor upon split-sibling custody awards that involve young children, such awards are not automatically barred." In re Larimer
(Nov. 16, 1998), Athens App. Nos. 98CA04 and 98CA05. Instead, "a decision to award custody of siblings to different parents must, like all custody determinations, be based upon the best interest of the children." Id. InLarimer, we noted that the "unique facts or circumstances in a given case could support a split-sibling custody award."
After our review of the case sub judice, we do not believe that the trial court abused its discretion by determining that Matthew's best interests would be served by designating appellee his residential parent. We believe that the instant case involves unique facts and circumstances to support the trial court's decision to issue a split custody award. The evidence reveals that Matthew is a special needs child who requires individualized attention and a stable routine. Appellee, because he does not work, can provide Matthew with a great deal of time and attention. Appellant, on the other hand, works at least forty-five hours per week and is not as readily available to provide care to Matthew. The evidence further shows that Kayla needs special attention so that she does not develop resentment due to the attention paid to Matthew's special needs. Appellee has more than sufficient time to devote to Matthew's special needs, while the evidence shows that appellant would not have as much time to devote to Matthew. While appellant clearly loves Matthew and wants to help him, as the circumstances currently stand, we found no error with the trial court's decision to designate appellee Matthew's residential parent and to designate appellant Kayla's residential parent.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
Harsha, J. Kline, J., concur in Judgment Opinion.